Easthampton Lumber and Coal Company, Limited, Respondent, v. Louise Worthington, Appellant.

Building Contract — Failure to Comply with Specifications. A building contract is not substantially performed by substituting, for that which is expressly required, materials, methods or workmanship which, in the opinion of the contractor and his experts, are "just as good," unless the substitution relates to a matter of minor importance, is made in good faith and for sufficient reasons, and there is an adequate allowance for the difference. And where it appears from the record in an action to foreclose a mechanic's lien for a balance alleged to be due upon the contract price and for extra work in erecting a dwelling house, that the contractor willfully failed to comply with twenty or more of the express requirements of the specifications, and that no adequate excuse or explanation has been given for such failures, the evidence is not sufficient to support a finding of the trial court that there was a substantial performance of the contract.

Easthampton L. & C. Co. v. Worthington, 108 App. Div. 355, reversed.

(Argued November 15, 1906; decided November 27, 1906.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 20, 1905, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Burlinson Coleman* for appellant. The builder, plaintiff's assignor, did not substantially perform his contract, and build the house according to the plans and specifications. (*Smith* v. *Brady*, 17 N. Y. 173 ; *Nolan* v. *Whitney*, 88 N. Y. 648 ; *Crouch* v. *Gutman*, 131 N. Y. 45 ; *Spence* v. *Ham*, 27 App. Div. 379 ; *Anderson* v. *Petereit*, 86 Hun, 600 ; *Hollister* v. *Mott*, 132 N. Y. 18 ; *Schultze* v. *Goodstein*, 180 N. Y. 248.)

*Timothy M. Griffing* for respondent. The contractor substantially performed the contract as modified by the parties. (*Woodward* v. *Fuller*, 80 N. Y. 312 ; *Nolan* v. *Whitney*, 88 N. Y. 648 ; *Crouch* v. *Gutman*, 134 N. Y. 45.)

VANN, J. This action was brought to foreclose a mechanic's lien filed by the contractor to secure payment of a balance alleged to be due upon the contract price and for extra work, in erecting a dwelling house for the defendant in the town of Easthampton, county of Suffolk. The trial court directed judgment for the plaintiff, the assignee of the contractor, for the entire amount claimed, and while the findings were in the short form it was found specifically "that there was a substantial performance of the contract by the contractor." The Appellate Division affirmed, but by a divided vote. The contract was in writing, and required the contractor to provide all the materials and perform all the work mentioned in the specifications, and to complete the building by the 15th of May, 1899. The contract price was $3,150, and the extra labor and materials amounted to $441.36, according to the claim of the contractor. The owner had paid $2,600, leaving a balance of $991.36, for which, with interest, judgment was rendered.

While the copy of the specifications used by the contractor differed somewhat from that retained by the architect, we

shall confine ourselves to the specifications delivered to the contractor, which he testified were a part of the contract and were used by him to build the house. Those specifications provided that "the house is to be set on 5 inch piles set 4 feet in ground to be of acceptable local wood to be approved by the architect." The contractor testified that "the house was set on locust posts. They were not set 4 feet in the ground. * * * It was not necessary on the sand or beach as that was; they went as far as perhaps two or three feet, down to frost. These piles were set upon flat stones. The flat stones were not called for in the specifications. It was better with the flat stones."

The specifications required "Hip rafters, 2 inches by 10 inches." No hip rafters were put in.

The other rafters were to be "2 inches by 6 inches, 20 inch on centers," but while the contractor put in rafters of the required size they were "but 24 inches on the center." He testified that he did this "because it makes a better job of it, it was no gain to me at all."

The first story beams were to be 2 inches by 10 inches, but beams 2 inches by 9 were put in, "because it was discovered that they were strong enough and it reduced the price."

"Stair horses, 3 inches by 10 inches," were required, but none were put in, because in the opinion of the contractor they were not needed.

"Ribbon strips, one inch by 7 inches," although required, were not put in, but smaller timber was used, because, as the contractor thought, "it made just as good a job as the others, there was really no change made, the timber used would cost more than the ribbon strip."

"Bridging, 2 inches by 2 inches," was called for but not put in and the explanation given was that "bridging 2 by 2 was out of stock, and they did not keep it in stock at any time."

The entire frame was to be covered with "⅝th inch sheathing," which in turn was to be covered with "Black Neponset building paper made by F. W. Bird & Son, E. Walpole,

Mass." The contractor testified that he did not use this paper "because it was not to be had; I used Child's paper; I consider that the red is best, and is used in preference to the black on Long Island. The black Neponset paper was not in stock at the time. * * * I should say that it (Child's paper) was as good as the other. * * * It is as expensive as the other as far as I know, I don't know just what the black would cost."

The manager of the plaintiff, testifying in its behalf, said that he knew of black Neponset paper and that it was a well-known article to the trade, but that the paper furnished he considered as good as the black Neponset. The architect testified that the paper used was porous and no better than newspaper; that it cost but fifty cents a roll while black Neponset cost about $1.75 a roll.

"Sampson's Spot Braided Cotton Sash cord," although called for, was not used, but Silver Lake cord substituted, because, as the contractor testified, "I never heard of Sampson's cord. I did not know anything in regard to the two different kinds of cord. The kind I used, Silver Lake, is considered the best in the market. I did not know anything about Sampson's and I know that Silver Lake is good." Another witness called by the plaintiff testified that the cord used "is good quality sash cord the same as is used on the eastern end of Long Island. As compared with Sampson's cord I do not know how they would compare in cost." The architect testified that the cord used was not durable and that it is already partly worn out while that called for by the specifications is strong and durable.

The specifications required "all tin to be of Merchant's Alaska for lining, flashing and gutters." The contractor did not use the kind specified, saying, "I suppose that Alaska tin is some special brand, there are a number of different kinds. I got this at Easthampton from Mr. Grimshaw. He is the only dealer in tin. It is used on first class jobs." Mr. Grimshaw testified that Alaska tin "had been done away with some years ago. The quality of tin used was of the best."

The contractor testified : " The specifications provide for all piping to be extra heavy and guaranteed to stand pressure ; all to have a coat of asphaltum for test.   The asphaltum was not done ; that was not put on I believe."   The plumber swore that asphaltum was left off where the pipes would show, because there the pipes were bronze and painted and the asphaltum would show through.   It was not omitted at the instance of Mrs. Worthington but through his own discretion as a business man.

The specifications called for " one copper, lined with tin, oval sink, 14 inches by 20 inches, with nickeled faucets, Fuller improved, nickeled traps made by Messrs. Fred Adee & Co."   The contractor testified, "I can't answer whether that was done ; the plumber will have to answer that ; " but the plumber said : " Adee does not make those things ; he buys them ; he is simply a dealer in them.   I can't answer whether this was done according to the specifications."   The architect testified that the one called for was worth $25 more than the one used.

In the bill for extras was an item of $12.75 " for locust posts."   The contractor testified that he charged extra for the locust posts because his contract " only took him to the sill of the house ; all below was extra."   The specifications provided specifically as follows : " Foundations.   The house is to be set on 5 inch piles set 4 feet in ground, to be of acceptable local wood, to be approved by the architect."

Among the extras is the following item : " Planing second floor second time, $9.75."   With reference to this item the contractor testified : " In the extras there is an item for planing the second floor.   The floor did not look well enough to suit Mrs. Worthington.   We oiled it and it was so bad that she was very much dissatisfied with it and we planed it off for her.   It was partly my fault ; it was oiled and I did not make a good job of it."

All the " extras " were allowed in bulk, at the prices charged, including the two items just mentioned.

We have set forth some specimens out of more than twenty

admitted failures to comply with the specifications and at the same time have given in substance the reasons of the contractor for the omissions. The contract was not substantially performed in all respects and there is no evidence to support the finding of the trial court that it was.

There is no substantial performance when no attempt is made to comply with certain express requirements of the specifications and no excuse or explanation is given for the failure. A contract is not substantially performed by substituting for that which is expressly required, materials, methods or workmanship which, in the opinion of the contractor and his experts, are "just as good," unless the substitution relates to a matter of minor importance, is made in good faith and for sufficient reasons, and there is an adequate allowance for the difference. The owner has a right to what the contractor agreed to give him, and unless he has it or when the failure is neither willful nor substantial, is fully compensated for the omission, there is no substantial performance and there can be no recovery. It is not sufficient for the contractor to build *a* house, but he must build *the* house contracted for and substantially comply with the specifications as to the method of construction, materials and workmanship before he is entitled to payment. (*Crouch* v. *Gutmann*, 134 N. Y. 45; *Spence* v. *Ham*, 27 App. Div. 379; 163 N. Y. 220; *Schultze* v. *Goodstein*, 180 N. Y. 248.)

In the case last cited we said: "The contractor may not deliberately violate his contract by the use of earthen construction instead of iron and small pipes instead of large ones, and yet claim that he has done as he agreed because the result is just as good. Unless the owner had the right to contract for what he wanted and to get what he contracted for, there was no use in making the contract. A building contract like any other is to be fairly performed according to its terms, and any substantial change, unless authorized by the owner or architect, is made at the risk of the contractor. In order to avoid injustice the law tolerates unsubstantial deviations made in good faith, but it exacts full compensation

therefor and permits a recovery on the theory of substantial performance only after the proper deductions have been made. The contractor had no right to substitute his own judgment for the stipulations of the contract, or to recover on the basis of complete performance, when * * * he wilfully and intentionally used inferior and less expensive materials in the place of those agreed upon. When the owner stipulated for iron pipe he had the right to iron pipe, regardless of whether some other kind, according to the opinion of the contractor or of experts, would do as well. He agreed to pay upon the condition that iron pipe was used, and he is not obliged to pay unless that condition is performed."

Without considering any other question, we think the judgment should be reversed because there is no evidence to support the finding that the contract was substantially performed.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER and HISCOCK, JJ., concur; WILLARD BARTLETT, J., not sitting.

Judgment reversed, etc.