## A. E. WEST PETROLEUM CO. v. ATCHISON, TOPEKA & SANTA FE RY. CO. et al.

### No. 6768.

United States District Court
W. D. Missouri, Western Division.

Oct. 15, 1952.

---

8. 342 U.S. at page 541, 72 S.Ct. at page 535.

George L. Gisler, Kansas City, Mo., for plaintiff.

Henry W. Fox, Lathrop, Woodson, Righter, Blackwell & Parker, Kansas City, Mo., for defendants.

RIDGE, District Judge.

Defendants having refused to pay the amount of a reparation award entered by the Interstate Commerce Commission in favor of plaintiff, this action is brought pursuant to the provisions of 49 U.S.C.A. § 16(2), to recover the amount thereof, together with reasonable attorney's fees as authorized by said section. The Commission's report and order are reported in 276 I.C.C. 429. There is no dispute concerning the facts; they are before the Court by stipulation of the parties.

Plaintiff's claim arises as a consequence of shipments of lubricating oil in packages, in carloads, that moved from Bradford, Pennsylvania, to Kansas City, Missouri. The carriers and routes employed from Bradford to "gateways" of the Central Freight Association territory are of no moment. The dispute between the parties relates to the transportation of said articles from the above "gateways" to a point of destination beyond, and revolves around the interpretation and application of certain tariff provisions contained in Agent Jones' Tariff, I.C.C. No. 3710, or successive issues thereof, applicable thereto. That tariff provided for what we shall hereinafter refer to as a 53-cent commodity rate on petroleum products from Bradford, Pennsylvania, to a group of stations in Central and Eastern Iowa, representative of which are Moravia and Cedar Rapids, Iowa. No commodity rate was published therein on petroleum products moving from Bradford, Pennsylvania, to Kansas City, Missouri. The shipments in question were delivered to plaintiff at Kansas City, Missouri, by defendants. The freight charges exacted therefor were assessed and paid pursuant to what we shall hereinafter refer to as a 67-cent, exception, classification rate published in Agent Kipp's Tariff, I.C.C. No. A–3616, or pursuant to whatever successive issue thereof was in effect at the time of the respective shipments. The last-named rate was specifically made applicable to petroleum products moving from Bradford, Pennsylvania, to Kansas City, Missouri, by Kipp's Tariff, supra.

By rule of the I.C.C. governing the publication of freight tariffs, certain instructions as to "routing", and determination of rates applicable to "intermediate-points", are required to be stated therein. We are only interested in Rule 4(k) of I.C.C. Tariff Circular No. 20, and Rule 27, as contained in Supp. 5 thereto. Rule 4(k), supra, in part provides:

"Routing over which the rates apply (must be) stated in such manner that such routes may be definitely ascertained. (Par. added.)

"This must be accomplished by one of the following plans: (1) By providing that the rates in the tariff apply

only via the routes specifically shown therein, or (2) by providing that the rates apply via all routes made by use of the lines of the carriers parties to the tariff except as otherwise specifically provided in the tariff."

Rule 27, supra, in part provides:

"*Commodity rates applicable to intermediate points.*—Subject to the provisions of notes 1, 2, 3, and 4 below, to any point of destination to which a commodity rate on a given article from a given point of origin and via a given route is not named in this tariff, which point is intermediate to a point to which a commodity rate on said article is published in this tariff via a route through the intermediate point over which such commodity rate applies from the same point of origin, apply to such intermediate point from such point of origin and via such route the commodity rate in this tariff on said article to the next point beyond to which a commodity rate is published herein on that article from the same point of origin via the same route."

Agent Jones' Tariff, supra, did not provide complete routing for the shipments here considered from Central Freight Association gateways to points of destination beyond. Consequently, in accordance with I.C.C. rules, the substance of Rule 4(k) reading: "The rates named in this tariff apply via all routes made by the use of the lines of any of the carriers parties to this tariff, except as otherwise specifically provided in tariff," was incorporated in that tariff as one of the provisions thereof. Said tariff also contained the "intermediate-point" rule, supra, as a part thereof.

As a basis for its claim for reparation, plaintiff contended before the I.C.C., and contends before this Court, that the 67-cent classification rate charged for the shipments involved was inapplicable, because of the lesser commodity rate contained in Jones' Tariff, and the foregoing provision as to "routing". In support of its contention, plaintiff asserts, and the stipulation of facts reveals, that there are segments of lines of carriers parties to Jones' Tariff, by

which a shipment of petroleum products could move from "gateways" to which that tariff applied, via Kansas City, Missouri, thence by back-haul to Moravia and Cedar Rapids, Iowa. Solely because of that possibility, plaintiff says that Kansas City, Missouri, is, within the meaning of Jones' Tariff, and the Rules of the I.C.C., supra, an "intermediate-point" between "gateways" covered therein and Moravia and Cedar Rapids, Iowa, and therefore the lesser commodity rate, applicable to stations in Iowa, is to be applied to these shipments moving from Bradford, Pennsylvania, to Kansas City, Missouri.

By its reparation award, the I.C.C. sustained plaintiff's claim and granted reparation damages. In so doing, the Commission found that the "question of applicability is entirely dependent on the interpretation of routing instructions governing the shipments beyond the Central Freight Association territory gateways. * * * Beyond, the applicable routing instructions state that 'the rates named in the tariff apply via all routes made by use of the lines of any of the carriers parties to this tariff, except as otherwise specifically provided in the tariff * * *.' " The Commission held: "Either the routing instructions as set out above permit routing by way of Kansas City and the application of the 53-cent rate, or they do not." Thus the Commission, giving a literal interpretation to a single provision of Jones' Tariff, supra, without more, so premised its award. It stated its "conclusion is inescapable that the defendants, by not publishing * * * a restriction, (to such tariff provision) allowed the rate to have application for their account by way of" Kansas City, Missouri; the Commission noting "that in connection with the 53-cent rate sought herein, certain participating carriers (not defendants herein) (had so) restricted its application," and finally all carriers parties to said tariff did so restrict its application, after reparation claim was made against them. (Some par. added.) 276 I.C.C. 430, 431.

From the foregoing, it is apparent that the award of the I.C.C. here made the premise of plaintiff's claim, is based wholly on a literal interpretation of the "routing

instructions" contained in Jones' Tariff, supra. The contention of plaintiff, that said award is based on an interpretation and construction of rules of the I.C.C. and presents matter that lends itself to the "expertise" of the I.C.C., and that this "court cannot substitute its judgment for that of the (I.C.C.)," is without merit. Cf. United States v. Mo. Pac. R. Co., 278 U.S. 269, 280, 49 S.Ct. 133, 73 L.Ed. 322. "What construction shall be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute." Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943.

■■ From the foregoing, it is manifest that the issue here presents a question of law as to the soundness of the ruling of the Interstate Commerce Commission, which, in turn, depends for its validity upon whether, in light of the stipulated facts, plaintiff is entitled to recover any damages of defendants by way of reparations. Cf. Chicago & N. W. Ry. Co. v. Wilcox Co., 7 Cir., 68 F.2d 883, 884. Such issue does not involve the validity of the rules, supra, of the I.C.C. What is here presented is the construction of a tariff incorporating as provisions thereof language also contained in rules of the I.C.C. How a tariff so provisioned is to be construed has nothing to do with the competence of the I.C.C. to promulgate and interpret its own rules. "The sole question is one of construction, of determination of the meaning of the words of the tariff, none of which is alleged to have a 'peculiar meaning'". Armour & Co. v. Chicago, M., St. P. & Pac. R. Co., 7 Cir., 188 F.2d 603, 608.

■■ What is the construction to be given to the above tariff? The tariff, so far as here pertinent, must be construed as a whole, in order to determine the intention of the parties bargaining for "routing" of transportation thereunder. All provisions of the tariff relating to that subject must be read and considered together and only where there is a reasonable doubt in meaning, or consideration of the whole, can it be said there is ambiguity. Christensen v.

Northern Pac. R. Co., 8 Cir., 184 F.2d 534. Then, too, the construction of the tariff should be consistent with the meaning which words used therein might reasonably carry to shippers to whom it is addressed. Union Wire Rope Corp. v. Atchison, T. & S. F. R. Co., 8 Cir., 66 F.2d 965. Another rule of construction applicable to tariffs, as it is to contracts generally, is that if a literal interpretation of any part thereof would operate unjustly or lead to absurd results, it is the duty of a court to avoid injustice and reject such a construction. W. J. Foye Lbr. Co. v. Pennsylvania R. Co., 8 Cir., 10 F.2d 437; Pressed Steel Car Co. v. Eastern Ry. Co. of Minn., 8 Cir., 121 F. 609. A contract is not to be presumed to have imposed an absurd or impossible condition on one of the parties, but will be interpreted as the parties must be supposed to have understood its terms at the time they consummated their bargain. Aronson v. K. Arakelian, Inc., 7 Cir., 154 F.2d 231; Kenyon v. Automatic Instr. Co., 6 Cir., 160 F.2d 878. So in an interpretation which evolves an unreasonable result, when a more probable and reasonable construction can be adopted, every intendment will be against the former construction or one which would operate as a snare. Star-Chronicle Pub. Co. v. New York Eve. Post, 2 Cir., 256 F. 435.

■ The tariff provisions here considered relating to "routing" are admittedly ambiguous, else the Commission in making the award in question would not have had to resort to matters *dehors* the tariff to construct the "route" which it determined made the "intermediate-point" rate of 53¢ applicable to the shipments here. Restatement, Contracts, Secs. 230, 231. The determination so made by the Commission appears to have been arrived at without regard to violations of Secs. 1 and 4 of the I.C.C. Act, 49 U.S.C.A. §§ 1 and 4, or through-route considerations, as authorized by Section 15(3) thereof, or any other factual matter. Clearly, it was arrived at without factual premise as to whether a shipper having resort to said tariff might reasonably assume that the "route" constructed by the Commission was one within the contemplation of said tariff, or as to whether

the "existence of a 'route' by way of Kansas City, (was) evidenced by past movements to Iowa points from the east by way of Kansas City." (276 I.C.C., loc. cit. 431.) In consequence of the foregoing, we do not believe that the award of the Commission here sued on is legally sound. Therefore, under the foregoing authorities recovery (if any) by plaintiff here depends on the proper legal construction and interpretation to be given to said tariff by this Court, in light of the facts stipulated.

From the title page and provisions of Agent Jones' Tariff, supra, it clearly appears that it was promulgated to fix rates for the transportation of articles moving over certain routes, from the east to points geographically west of and beyond the "gateways" above referred to. The "intermediate-point" provision contained in said tariff in substance provided that the commodity rates fixed therein applied to "any destination point * * * via a given route" where the "intermediate-point" was "not named in the tariff, *which point is intermediate to a point* to which a commodity rate * * * is published * * via a route through the intermediate point"; and, "via such route * * * to the next point *beyond*" as to which a commodity rate was published. Jones' Tariff by its terms was intended to fix definite routing for the rates therein. As above stated, however, it did not define the routing for "petroleum products" from the "gateways" to points beyond, destined to Iowa. Hence, the general "routing instructions" above set forth were made applicable to the shipments considered.

When such routing provisions are made applicable to said shipments, we believe that the geographical territory intended to be serviced by the tariff, the "intermediate-point" provisions thereof, the stipulated facts, particularly, that there was "at all pertinent times, for shipments of petroleum lubricating oil from Bradford, Pennsylvania, to the Iowa destinations covered by Agent Jones' Tariff, * * * one or more available direct routes *not* via Kansas City"; and that "no normal, customary, or cognizable volume of shipments ever moved from Bradford to (Iowa) destinations via Kansas City"; must be considered to reasonably determine the applicability of the rates therein provided to said shipments. When a shipper having recourse to said tariff would so consider the same, we do not believe that a literal interpretation of the general "routing instructions", standing alone, which would require transportation over a route 34.9% circuitous, requiring a back-haul of 295 miles, or more, to establish applicability of an "intermediate-point" rate, is a reasonable interpretation of such tariff, or one which a shipper might feasibly and logically assume from the provisions thereof. The evidence here is that it is 219 miles by direct route from Chicago, Illinois (the gateway through which the shipments actually moved, as directed by the shipper) to Cedar Rapids, Iowa. From Chicago to Kansas City, it is 452 miles, and from Kansas City to Cedar Rapids, Iowa, 295 additional miles. (Chicago to Moravia is 316 miles; Kansas City to Moravia, 181 miles.) We may take judicial notice that Cedar Rapids, Iowa, and Moravia, Iowa, are geographically north and east of Kansas City, as is Chicago, Illinois, and that all the "gateways" of the Central Freight Association territory covered by the tariff in question are east of Iowa destination points named therein.

In the above setting, we believe that a shipper having recourse to Jones' Tariff, supra, and not finding a specific rate therein applicable to Kansas City, Missouri, would not consider the latter as being on a "route" and a "point * * * intermediate to a point to which a commodity rate * * * is published" therein. The word "route" as used in said tariff must be considered from the standpoint of the geographical situation, lying between point of origin of shipment and point of destination thereof. When so considered, the general "routing instructions" of the tariff provide a "route" running through an "intermediate-point" that geographically lies between "gateways" covered by the tariff and destination points so named. The "route" to such "intermediate-point" is to be arrived at by "use of any lines of the carriers parties to the tariff" lying and situate between such termini. If there is circuity of routing

necessary to determine such "intermediate-point" then the permissible circuity should reasonably be within, or immediately adjacent to, the above geographical scheme. A "route" so constructed from the framework and provisions of the tariff would be a feasible one, and, in our opinion, such as a shipper examining the tariff might reasonably apprehend.

To consider and determine a point geographically located beyond, i. e. further away, from a gateway than a destination point to which a rate is made applicable in the tariff as being an "intermediate-point" contemplated therein, is to disregard and circumvent the word "beyond" as used in the "intermediate-point" provisions thereof, and as made manifest by all the geographical considerations apparent from the tariff. It also brings about absurd consequences and one which we do not believe can be sustained by reasonable construction, or is contemplated by the I.C.C. Act, supra.

▮▮▮▮▮ "Under the Interstate Commerce Act, a carrier must not only provide transportation service at reasonable rates over its own lines but has the duty 'to establish reasonable through routes with such other carriers, and just and reasonable rates * * * applicable thereto'." Thompson, Trustee, v. United States, 343 U.S. 549, 554, 72 S.Ct. 978, 981. In the Thompson case, the Supreme Court held that where there was "no evidence that any through transportation service [had] ever been offered" between given termini the mere fact that a carrier's "lines connect" with another does not authorize the Commission "to establish through routes under Section 15(3) and (4)" of the I.C.C. Act. 343 U.S., loc.cit. 557, 558, 72 S.Ct. loc.cit. 984. In light of the decision there made, there can be no doubt concerning the fact that the Commission would be without power to establish a "through route" along the lines of carriers, parties to the instant tariff, such as the Commission, by tariff construction, set up to make the 53¢ rate contended for by plaintiff applicable to the shipments in question. That being so, then by what authority does the Commission say, as by its instant award, that any seg-

ments of lines of carriers may be used to establish a "route", no matter how circuitous, when "routing instructions" of a tariff such as here are considered? The only authority that the Commission has in that respect is such as is given it in the first instance by Sections 13 and 16 of the I.C.C. Act. 49 U.S.C.A. §§ 13 and 16. The power thus vested in the Commission is to hear complaints charging violations of the I.C.C. Act by a carrier. Carriers, by the I.C.C. Act and by the Rules of the I.C.C., are to be held to strict compliance with the tariff rates and provisions published by them. Union Wire Rope Corp. v. Atchison T. & S. F. Ry. Co., supra. But that is not to say that by strict construction of a tariff, though unambiguous in its terms, the Commission, or this Court, may impose upon a carrier a duty or obligation not reasonably assumed, or one that is not legally imposed. For the Commission so to do, and for this Court to give approval thereto, would be to do by indirection, i. e. establish a "route" by mere consideration of lines and connections between carriers, which accomplishment the Commission could not do directly.

▮▮ ▮▮ Therefore, we cannot agree with the Commission in the case at bar, that a literal interpretation of the "routing instructions" of the instant tariff may be made without consideration of the factors mentioned above. To do so would be to permit "shippers" to consider matters in *ex parte* interpretation of the instant tariff, which the Commission held could not be considered when proffered by a carrier; namely, a "route" constructed by a shipper out of segments of lines and connections of carriers; as against the stipulated fact that no such "route" was normal, customary, or recognized by a carrier that would make Kansas City, Missouri, intermediate to Cedar Rapids, Iowa. The fact that the carriers, by supplements to Jones' Tariff, supra, limited and restricted the "Routing Instructions" therein, after claims for reparation were asserted, cannot in law be held to be tantamount to admitting the correctness of plaintiff's contention. Southern Pacific Co. v. Lothrop, 9 Cir., 15 F. 2d 486; Mathes & Sons Shoe Co. v. B. &

A. R. Co., 209 I.C.C. 177; Swift & Co. v. Alton R. Co., 262 I.C.C. 783.

By its award in the instant matter, the Commission was bound to run into trouble when it gave a literal interpretation to the "routing instructions" of the tariff and determined that any combination of segments of lines provided a "route" thereunder. To be sound in law, such interpretation must and should be given universal application. In making such application and enforcing that principle, the Commission has held that Springfield, Missouri, 85% circuitous, and Tulsa, Oklahoma, 155% circuitous, are intermediate to Iowa destination points. See Herman-Brownlow Co. v. Mo. Pac. R. Co., 273 I.C.C. 193; and 278 I.C.C. 171; and Pure Oil Co. v. Alton & Sou. R. Co., No. 30797, I.C.C., decided Feb. 26, 1952. The latter decisions are not before this Court for review, but are only referred to for the purpose of better pointing up the arbitrary, ultimate absurdity and unreasonableness of the rule attempted to be enforced by the I.C.C. in the instant award. In so doing, it appears that the Commission has been caught in that mental vortex which Mr. Justice Cardozo referred to in Jacob & Youngs, Inc. v. Kent, 230 N.Y. 239, 129 N.E. 889, 891, 23 A.L.R. 1429, when he said: "Those who think more of symmetry and logic in the development of legal rules than of practical adaptation to the attainment of a just result", remain "troubled by a classification where the lines of division are so wavering and blurred. * * *"

### Findings of Fact

(1) The Court finds the facts to be as stipulated by the parties.

(2) The award of the I.C.C. here made the basis of plaintiff's claim is not premised on any fact, decision as to which is within the "expertise" or particular competence of the I.C.C.

(3) The word "route" as used in the "Routing Instructions" of Jones' Tariff, supra, to make the "intermediate-point" rate applicable, means use of lines of carriers parties to the tariff geographically lying between "gateways" covered by said tariff, and points (westerly) "beyond", named as destination point rates therein.

(4) Moravia and Cedar Rapids, Iowa, being geographically north and east of Kansas City, Missouri, the latter is not an "intermediate-point" between the former, and "gateways" within the meaning of Jones' Tariff, supra.

(5) A construction and interpretation of Jones' Tariff, supra, that would permit any possible combination of lines and connections between lines of carriers parties thereto to form a "through route" or continuous line so as to make Kansas City, Missouri, intermediate between a "gateway" covered thereby, and destination points in Iowa, is factually absurd, unreasonable, arbitrary and not within the meaning and intendment of the provisions of said tariff.

(6) The 67-cent classification rate referred to in the stipulation of facts, assessed and collected by defendants, was specifically made applicable to the shipments in question by Kipp's Tariff, supra.

### Conclusions of Law

(1) The Court has jurisdiction of the parties and the subject-matter of this action.

(2) The applicable rate on the shipments involved in this action was the 67-cent rate assessed and collected by defendants, specifically made applicable thereto, as provided in Kipp's Tariff.

(3) A literal interpretation of the "Routing Instructions" of Jones' Tariff, supra, that permits any possible combination of lines and connections between lines of carriers parties to said tariff to be considered as a "route" thereunder, so as to make Kansas City, Missouri, an intermediate-point between gateways covered thereby and destination points in Iowa, being arbitrary, unreasonable, and which leads to absurd results, is to be rejected.

(4) The award of the I.C.C., basis of plaintiff's claim herein, is contrary to law.

(5) Plaintiff's complaint should be, and the same is hereby, dismissed.

It is so ordered.