**Lemoyne Sleeper Co. v. Bolger**

*Ronald M. Katzman,* for plaintiff.
*John B. Pearson,* for defendant.

DOWLING, J., December 28, 1971.—This is an action to enforce a restrictive covenant in an employment contract whereby the employe agreed that in the event of termination he would not engage in a similar or competing business for three years within a 100-mile radius of Harrisburg, the site of plaintiff's business.

The chancellor, rejecting defendant's contention that his action was justified by plaintiff's conduct, found the termination to be without legal cause and ordered enforcement of the noncompetitive agreement. From the decree nisi defendant has filed certain exceptions which resolve into the basic issue of whether or not he was relieved of his contractual obligation because of certain breaches on the part of plaintiff.

The breaches charged to plaintiff are that it failed to impart essential trade secrets and data, that it did not abide by the prices agreed upon and that it was involved in a retail business; all of which was contrary to the franchise agreement.

As to the trade secrets and data, there was, first, no evidence that such critical information existed. Under consideration is not a highly technical and complex manufacturing process but rather the sale of beds and related accessories. What background was imparted is in dispute. Plaintiff's president, Gerald Pearlman,

said he took defendant through the plant and explained the business. Harry Bolger says he did not and that all the assistance he received was the help of one of plaintiff's salesmen for several days at the time he opened his store. If this point was of any significance, it was factually resolved in plaintiff's favor. In addition, the record is devoid of any testimony that indicates that defendant ever requested any particular information which was refused him or that he suffered any particular difficulties because of a failure to provide such data.

Of more concern, apparently, is the charge that plaintiff, contrary to the agreement, sold products at its Lemoyne store below that agreed upon by the parties. However, as noted in the opinion,[1] out of a total gross sales of some $75,000, the only concrete evidence offered pertained to four instances of underselling, amounting to a total difference of less than $50. The protest as to plaintiff engaging in the retail sales business other than at its own location, when examined in the light of evidence presented, is likewise of a relatively insignificant nature consisting in a 13-month period of approximately half a dozen occasions with no real evidence that such sales constituted the operation or involvement in another retail business.

As discussed in the prior opinion, the issue concerns the doctrine of substantial performance which is to the effect that a material failure of consideration is required before the other party is discharged from his obligations under a contract. It was felt in the previous decision, and it is now, that the instant case was a classic example of the applicability of the principle inasmuch as a comparison of the amount of sales,

---

[1] Filed September 16, 1971.

period of time involved and the number of transactions shows the deviations to be of a minimal nature.

Defendant, denying the applicability of the rule, cites Sgarlat v. Griffith, 349 Pa. 42 (1944). In that case, a contract provided that if excavating rock was found which would require removal by blasting, an additional sum would be paid for its removal. The contractor did find rock, but because of the fear of damaging nearby buildings, removed it by a jackhammer rather than by blasting. The Supreme Court, in reversing both the lower court and the Superior Court, took the position that it was not material how the rock was removed and that the deviation was trivial. They discussed at some length the doctrine of substantial performance as set forth in Morgan v. Gamble, 230 Pa. 165, and Jacob & Youngs v. Kent, 230 N.Y. 239, 129 N. E. 889, as well as the Restatement of Contracts, §§274 and 275; authorities considered and discussed in the chancellor's opinion. Defendant fastens on a phrase from Jacob & Youngs v. Kent, cited in the opinion, that "the omission must be both trivial and innocent," arguing that several of the instances of contract deviation in this case were intentional. However, the entire quotation from the Jacob & Youngs v. Kent case as set forth in Sgarlat v. Griffith is more meaningful:

"The courts never say that one who makes a contract fills the measure of his duty by less than full performance. They do say, however, that an omission, both trivial and innocent, will sometimes be atoned for by the allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture . . . We must weigh the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of enforced adherence.

Then only can we tell whether literal fulfillment is to be implied by law as a condition. This is not to say that the parties are not free by apt and certain words to effectuate a purpose that performance of every term shall be a condition of recovery. That question is not here. This is merely to say that the law will be slow to impute the purpose, in the silence of the parties, where the significance of the default is grievously out of proportion to the oppression of the forfeiture."

The full flavor of this quotation, as well as the sense of the other authorities quoted, substantiates the position that the trivial deviations in this case did not warrant defendant's termination.

Defendant raises for the first time the somewhat unique argument that he is not really competing with plaintiff in selling furniture, bedding and similar merchandise at the same location under a new name. This is based on a statement taking entirely out of context and inaccurately paraphrased that Mr. Pearlman did not consider retail store selling as being in direct competition with his company. What he said was: "Now, there was something mentioned before about our competition being many types of bedding operations and so forth, furniture stores, etcetera. I don't consider them to be direct competition."

It was undisputed that plaintiff at its plant also carries on a retail operation, selling both items it manufactures and others which it merely distributes. Certainly, plaintiff, in engaging in the sale of bedding and other accessories, is in direct competiton and a fortiori in a similar business. It might also be noted parenthetically that plaintiff pleaded in the complaint that defendant's activities were in direct competition with it, and defendant admitted this allegation in his answer.

Defendant's final plea is that it would be inequitable to enforce the noncompetitive agreement citing such factors as his lease of the store, a failure to make the money which he alleges plaintiff promised him he would, and the alleged failure of plaintiff to live up to all of its contractual promises.

The law, however, is that employment contracts containing general covenants by an employe not to compete after the termination of his employment are prima facie enforceable[2] (if reasonably limited as to time and extent). There is no requirement that there be any evidence that defendant would suffer special damages: Hayes v. Altman, 424 Pa. 23 (1967). There are also corresponding inequities supporting plaintiff's position as discussed in the previous opinion.

In accordance with the following, we affirm the chancellor's conclusions of law and, therefore, enter the following:

## FINAL DECREE

And now, December 28, 1971, the exceptions of defendant are overruled and dismissed and a final decree is entered enjoining defendant from directly or indirectly entering into a similar or competing business within a radius of 100 airline miles of the City of Harrisburg until February 3, 1974.

The costs to be borne by defendant. The prothonotary is directed to notify the parties or their counsel of this decree forthwith.

---

[2] Defendant did not assert that the restrictive agreement was unreasonable as to duration or area.