OPINION OF THE COURT
David B. Saxe, J.
The petitioner Barbizon Hotel, once a famous residential hotel for women in Manhattan, is undergoing a face-lift as a result of a plan to renovate certain rooms at this famous dowager. The respondent Virginia McDaniel lives in room 1342; her landlord would like to renovate this room and has asked her to move to room 1046. She has refused.
Room 1342, her present quarters, is an L-shaped room of approximately 115 square feet. It is furnished with carpeting and standard hotel furniture and has two windows, one facing north and one to the west. The room contains only a sink; bathroom facilities are located down a hallway.
Room 1046, to which Ms. McDaniel has been asked to move, is approximately 130 square feet with one window facing north. Unlike room 1342, the bed, desk, chair, dresser and wallpaper are all new and the room also contains a color television with free cable. Attached to this room is a semiprivate bathroom with a door that leads to an adjoining room.
The landlord brings this eviction proceeding under section 53 (subd [e], par [ii]) of the Code of the Metropolitan *180 Hotel Industry Stabilization Association, Inc. (Code), which provides that a hotel tenant may be ousted in a summary proceeding if she fails to move to a substantially similar room in the hotel, upon proper notice, to facilitate the reconstruction, renovation or improvement of the vacated unit or the hotel itself pursuant to the owner’s lawful plan of renovation. The owner is required to move the tenant’s belongings to the other room. Presumably, this section was intended to facilitate the renovation of older, residential hotels while at the same time, minimizing disruption to hotel boarders.
The Hotel Stabilization Law (see Local Laws, 1969, No. 51 of City of New York) is a similar enactment to the New York City Rent Stabilization Law of 1969 (Local Laws, 1969, No. 16 of City of New York) which was upheld against a legal challenge to its delegation of rule-making power to a private organization, the Real Estate Industry Association. In 8200 Realty Corp. v Lindsay (27 NY2d 124) the court held that the Rent Stabilization Law was a valid exercise of the legislative authority of the city. Similarly, the Hotel Stabilization Law permits a private organization, The Metropolitan Hotel Industry Stabilization Association, Inc., to adopt rules and regulations to facilitate the purpose of the law. Section 53 (subd [e], par [ii]) of the Code is an example of such a rule. Its legal efficacy depends upon the approval by the Housing and Development Administration of the City of New York, which was given on August 21, 1970.
There is no indication whether section 53 (subd [e], par [ii]) of the Code, or any others, for that matter, were ever published in the manner provided by section 1105 of the New York City Charter. That section deals with rule making by city agencies and requires that in the process of rule making, a broad range of governmental, community and news disseminating groups receive notification of the impending rule. (NY City Charter, § 1105, subds c, d.) The issue of whether or not this Code section is in reality a rule of a municipal agency or a rule of a private association and immune from section 1105 requirements (see Stewart v Board of Examiners of Bd. of Educ., NYLJ, Dec. 30,1970, p 16, col 7) was not raised by the parties and in the absence of *181 any opposing contentions, this rule is presumed to be valid. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 11.)
For the required notice of removal to be a predicate for eviction under section 53 (subd [e], par [ii]) of the Code, the landlord must establish that its plan of renovation is a lawful one. In one case, Wilson v Barbilex Assoc. (NYLJ, June 17, 1981, p 7, col 1) the owners attempted eviction of hotel residents under section 53 (subd [e], par [ii]) of the Code, contending that it intended to renovate the premises into a luxury hotel. Nevertheless, the court said that the “lawful plan” which formed the basis for the notices for removál of tenants pursuant to section 53 (subd [e], par [ii]) of the Code was the former owner’s apartment conversion plan under section 54 of the Code. The court noting that a requirement of a section 54 conversion is that the newly converted apartment units be subject to the Rent Stabilization Law of 1969, found that since the landlord had not agreed to the rent stabilized status of these units, the condition necessary for owner action under either section 54 or section 53 (subd [e], par [ii]) of the Code had been fulfilled. The landlord was enjoined from proceeding with evictions based upon the invalid notices.
In order to establish the existence of their “lawful plan”, Barbizon offered in evidence a plan of renovation approved by the New York City Department of Buildings dated July 9, 1981. This plan formed the basis of their notice to Ms. McDaniel under section 53 (subd [e], par [ii]) of the Code. Barbizon’s managing agent testified to the owner’s intent to renovate and improve the hotel under this plan.
I required testimony regarding the plan of renovation because the issuance of a building permit by the New York City Department of Buildings following the acceptance or approval by them of plans to improve, renovate or reconstruct does not conclusively establish the existence of a lawful plan. In fact, the court is not divested of jurisdiction to investigate, analyze and hear testimony regarding the nature of the plan, the owner’s intent and the possibilities that what may appear to be a lawful plan of renovation may in fact be, for example, a subterfuge for a plan of demolition and conversion to apartment status. (Matter of Gioeli, 221 NYS2d 568.)
*182 Approval of the plans by New York City’s Department of Buildings appears to presumptively establish the existence of a lawful plan. (Administrative Code of City of New York, § C26-118.1.) This pro se tenant did not rebut this presumption. I find, therefore, that Barbizon has proceeded, for purposes of this eviction case only, under a lawful plan.
I am now required to determine if Barbizon offered the tenant a “substantially similar” room. McDaniel objects to the switch for five reasons: First, she testified that the closet space in the new room is half the size of that" in her present room. The landlord’s witness testified that the dimensions of both closets were comparable. Ms. McDaniel also contended that her security and safety would be placed in greater jeopardy in the new room because the semiprivate bathroom creates one more avenue of access to her room. She said that she would rather forego the convenience of having an adjoining bathroom and instead use the hall facilities because of this fear. Barbizon’s managing agent testified that there were adequate locks on both doors that lead from the bathroom to the new room and the room adjoining the bathroom. If McDaniel was using the bathroom, she would be able to prevent access by someone from the room next door by locking the door in the bathroom that connects to the other room. If she were in room 1046 (the new room) she could lock the passage door to the bathroom and in that way bar entry to her room.
I hold that the semiprivate bathroom would not diminish the security to a tenant in room 1046 and McDaniel’s fear, though genuine, is unrealistic.
Ms. McDaniel testified to three other reasons for her belief that the new room was not substantially similar to the old one: (a) that she preferred the L shape of room 1342 over the square shape of room 1046 because she had been able to partition off part of room 1342 in order to effectively create two separate rooms (i.e., a bedroom and a living room) rather than one room. Nevertheless, room 1046 is in fact larger, (b) That room 1046 would be noisier than room 1342 because it was closer to the elevator bank. She testified that it was important to live in a room that was quiet during the daytime hours, since she worked at night and slept during the day. The tenant offered no indepen *183 dent proof that the new room was noisier, and (c) that she preferred her present two-window room over a room with one window.
The test of what is a substantially similar room must be determined by an objective standard. If the subjective notions of each tenant were to be considered, the intent of section 53 (subd [e], par [ii]) of the Code would be nullified.
I hold, based upon testimony that I heard, that room 1046 is substantially similar to room 1342. Although some individual features of her present room may be more desirable than room 1046, in the main, room 1046 is substantially similar, if not superior, to room 1342.
A somewhat analogous situation is presented in the Uniform Commercial Code dealing with the buyer’s remedy of “cover” under section 2-712 of the Uniform Commerical Code. After a breach by a seller of goods, a buyer may “cover” by purchasing goods that are in some circumstances not identical with those identified to the contract, but instead are commercially usable as reasonable substitutes. (See Uniform Commercial Code, § 2-713, comment 2.) “Substitution of equivalents may not have the same significance in fields of art on the one side and in those of mere utility on the other.” (Jacob & Youngs v Kent, 230 NY 239, 243.)
Apartment dwellers often view their own dwelling unit as unique and consequently would expect a replacement unit that is required by law to be substantially similar, to be an exact replica of their present apartment. To them, their apartments are not fungible. There is, according to this view, no such thing as an objective equivalent. This rational viewpoint should be carefully considered by a court before ordering an eviction under the terms of this Code section.
To expect an exact identical substitution of either product or service is often unrealistic and untenable. The present statute (Code, § 53, subd [e], par [ii]) correctly reflects this view.
The nature of removal was proper; the plan to renovate appears “lawful” and the substitute room offered was substantially similar to her present room. She should have moved.
*184 Her failure is reason for eviction. Nevertheless, if I ordered an unconditional judgment of eviction, I would be penalizing the tenant, who having had a genuine dispute with the management regarding the similarity of the rooms, now might be evicted after a court finds, as I find here, that the rooms are indeed substantially similar. The result would be an unfair and unnecessary forfeiture of the tenant’s lease rights under the circumstances. (See 220 West 42 Assoc, v Cohen, 60 Misc 2d 983.)
I do not believe that the Code provision involved was ever intended to prevent a hotel tenant from disputing in good faith the proposed relocation. If I decided here in favor of the tenant, it is not unlikely that the landlord, intent on renovation, would try again by soliciting the tenant’s consent for removal to another substantially similar room. The tenant should not now be penalized for having previously exercised her objections. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 148.)
The petitioner is entitled to a final judgment of possession. The warrant shall issue immediately but be stayed until April 30,1982 provided (a) that Ms. McDaniel moves to room 1046 and (b) that she pay to petitioner the money judgment to be entered herein for unpaid use and occupancy. The stay until April 30,1982 is effective if McDaniel moves within one week from the date she receives a copy of a judgment to be entered with notice of its entry and additionally pays the outstanding money judgment within that time period. If she fails to perform either of these obligations, the stay shall be vacated at the end of the one-week period. Upon compliance with both provisions, the warrant shall be permanently vacated and monthly use and occupancy shall be paid at the rate indicated on or before the fifth day of each month.
The use and occupancy to which petitioner has and will be entitled is measured by the prevailing monthly rental of $388. No payments have been received since September, 1981. The petitioner is therefore entitled to $1,944 through February, 1982. A money judgment for this amount may also be entered.