BRYAN, Judge.
 

 Superior Wall and Paver, LLC (“Superi- or”), the plaintiff/counterdefendant below, appeals from a judgment in favor of Pamela E. Gacek and Mark R. Gacek, the defendants/counterplaintiffs below. We affirm.
 

 Procedural History
 

 On March 16, 2007, Superior sued the Gaceks. Superior alleged that it and the Gaceks had entered into a contract (“the contract”) for Superior to prepare and install concrete pavers at the Gaceks’ residence, that Superior had performed its obligations under the contract, that the
 
 *716
 
 Gaceks had not paid Superior $14,350
 
 [1]
 
 of the money it was due under the contract, and that Superior had recorded a verified statement of lien against the Gaceks’ property. Based on those allegations, Superior claimed that the Gaceks had breached the contract by failing to pay Superior $14,350 of the money it was due under the contract, that the Gaceks owed Superior $14,350 for work and labor Superior had performed, and that Superior was entitled to the perfection of its lien against the Gaceks’ property.
 

 Filing an answer and counterclaim, the Gaceks denied that they were liable to Superior and asserted that Superior was liable to them because, the Gaceks said, they had paid Superior more than the contract price, Superior had improperly attempted to increase the price after beginning the job because it had made an error in calculating the amount of material needed to complete the job, Superior had not properly installed the pavers, Superior had not complied with the design agreed upon, Superior had not used the quality of materials agreed upon, Superior had not completed the work agreed upon, and Superior had not performed its work in a good and workmanlike manner. In their counterclaim, the Gaceks stated claims of breach of contract, negligence, wantonness, fraudulent misrepresentation, and slander of title. Answering the Gaceks’ counterclaim, Superior denied that it was liable to the Gaceks. The Gaceks subsequently amended their answer to assert an additional affirmative defense and amended their counterclaim to seek damages for mental anguish allegedly caused by Superior’s breaching the contract and its negligence. Answering the Gaceks’ amended counterclaim, Superior denied that it was liable to the Gaceks.
 

 On February 23, 2010, Superior moved for a partial summary judgment “as to [the Gaceks’] Counterclaims for Wantonness, Fraudulent Misrepresentation, and Slander of Title and [the Gaceks’] claims for emotional and/or mental damages.”
 

 On February 26, 2010, the parties participated in mediation. As a result of the mediation, the parties entered into a written agreement (“the mediation agreement”), which provided, in pertinent part:
 

 “The parties mediated the ... action on February 26, 2010 ... and reached the following settlement agreement:
 

 “1. [Superior] will execute a Release and Indemnity Agreement in favor of the [Gaceks] in exchange for payment of the sum of $20,000 to [Superior] from [the Gaceks]. One-half of this amount ($10,000) will be paid by the [Gaceks] to [Superior] after the scope of work is agreed upon by the parties as described in Paragraph 4 herein. After the work is complete, [Superior] will provide [the Gaceks’] counsel a Certificate of Completion. Upon providing this Certificate of Completion, [the Gaceks] will pay [Superior] the remaining one-half ($10,000) within seven (7) days.
 

 “2.
 
 [Superior] agrees to take all necessary action and file all papers necessary to remove all liens that have been filed against the [Gaceks’] home within ten (10) days of the scope of work being agreed upon by the parties as contemplated in Paragraph 4.
 

 “3. In exchange for payment of $6,000 to [the Gaceks] by American Resources Insurance Company, the [Ga-ceks] agree to dismiss with prejudice all counterclaims they have filed against [Superior], including all claims for personal injury, mental anguish and emotional distress. This payment must be
 
 *717
 
 made on the same date as the initial $10,000 payment is made by the [Ga-ceks] to [Superior].
 

 “4. [Superior] agrees to repair all sunken or depressed areas in the subject driveway in accordance with the Sims Stone Interlocking Concrete Paver Product Information Typical Installation Standards provided to [the Gaceks] with the 2/8/06 Proposal. All material is guaranteed to be as specified. All work to be completed in a professional manner according to industry standard practices. The square footage of the areas to be repaired must be agreed upon by all parties within 14 days from the date of this Agreement. Otherwise, the Settlement Agreement is void. Any repairs agreed upon herein will be performed by [Superior] within 80 days after the date of the agreed upon areas for repair are determined.
 

 “5. [Superior] agrees to install a French drain from the carport to the street within 30 days after the date that the agreed upon areas for repair of the driveway in Paragraph No. 4 are determined.”
 

 On March 9, 2010, Superior moved to enforce the mediation agreement. Following a hearing, the trial court denied that motion on March 10, 2010.
 

 On March 15, 2010, the trial court held a bench trial at which it received evidence ore tenus. On March 19, 2010, the trial court entered two judgments. One of those judgments granted Superior’s partial-summary-judgment motion “as to the [Gaceks’] claims for Wantonness, Fraud, and Slander of Title” but did not grant it as to the Gaceks’ “claims for emotional and/or mental damages.” The other judgment (“the second March 19, 2010, judgment”) found in favor of the Gaceks with respect to their counterclaims of breach of contract and negligence and awarded the Gaceks damages in the amount of $60,500. Neither of the judgments entered by the trial court expressly adjudicated Superior’s claims against the Gaceks.
 

 On April 16, 2010, Superior filed a post-judgment motion, which the trial court denied on April 20, 2010. Superior then timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 Because neither of the two written judgments entered by the trial court on March 19, 2010, expressly adjudicated Superior’s claims against the Gaceks, we remanded the action for the trial court to enter a judgment adjudicating those claims, and the trial court entered a judgment amending the second March 19, 2010, judgment to add a provision finding in favor of the Gaceks with respect to Superior’s claims against the Gaceks.
 

 Factual Background
 

 In January 2006, the Gaceks, who then had a driveway (“the existing driveway”) at their residence that was surfaced, in part, with concrete and, in part, with asphalt, wanted to install interlocking concrete pavers (“pavers”) where the existing driveway was located. Ted Buell, who was then a co-owner of Superior along with Michael Darby,
 
 [2]
 
 testified that he measured the area where the existing driveway was located in order to provide the Gaceks with a proposal for installing pavers where the existing driveway was located. Buell further testified that he measured the area where Mark R. Gacek told him to measure and that Buell’s measurements indicated that Gacek had specified an area of approximately 5,000 square feet where he wanted the pavers installed.
 

 
 *718
 
 After measuring the area where the pav-ers were to be installed, Buell prepared a written proposal dated February 8, 2006, and submitted it to the Gaceks. That proposal stated:
 

 “We hereby submit specifications and estimates for:
 

 “Interlocking Concrete Pavers
 

 Gassick [sic] Residence — Driveway
 

 “Scope of Work:
 

 “-Level necessary portion of driveway for required base.
 

 “-Install base foundation (89/10 [crushed limestone] leveling pad approx. 3" — 4" on top of existing driveway.
 

 “-Install interlocking concrete pavers. (Paver style and color to be determined by homeowner) in areas determined by owner.
 

 “Approx: 5000 Square Feet
 

 Price per Sq. Ft. = $9.00
 

 Includes concrete pavers, base material, installation.
 

 “We propose hereby to furnish material and labor — complete in accordance with the above specifications, for the sum of: Forty Five Thousand and 00/100 Dollars ($45,000)
 

 “Payment to be made as follows:
 

 “$20,000 Down payment (will reserve materials before price increase). Balance due upon completion.
 

 “All material is guaranteed to be as specified. All work to be completed in a professional manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado, and other necessary insurance. Our workers are fully covered by Worker’s Compensation insurance.”
 

 The Gaceks accepted the proposal, and it became the parties’ contract. The Ga-ceks paid Superior a down payment in the amount of $20,000 in March 2006. Superi- or began work on the project in July 2006.
 

 Colin Schmidt, Superior’s foreman on the project, testified as follows. Darby, who was then a co-owner of Superior and is now its sole owner, instructed Schmidt to install the pavers where the Gaceks wanted them installed and told him that the area where the pavers were to be installed amounted to approximately 5,000 square feet. Although Darby did not show Schmidt the contract, Schmidt understood from talking to Darby that he was supposed to install the pavers “pretty much where the old driveway was.” He further understood that he was to put the pavers on top of the concrete where the concrete was still good and to remove the concrete where it would cause the pavers to be too high to tie into the road or the garage. Schmidt testified that, when he prepared the site for the installation of the pavers, he discovered that bushes had grown over the asphalt along the edges of the existing driveway and that the area of the existing driveway covered by the bushes had not been included in Buell’s measurements. He realized that covering that additional area with pavers would result in pavers being installed in an area that exceeded 5,000 square feet. Schmidt testified that he asked Darby if Darby had realized that the edges of the existing driveway had become overgrown with bushes, and Darby answered in the negative.
 

 Schmidt testified that he then asked the Gaceks whether they had noticed that the edges of the driveway had become overgrown with bushes, and they responded in the negative. Schmidt testified that he
 
 *719
 
 asked the Gaceks if they wanted him to install pavers where the edges of the existing driveway had become overgrown with bushes for the entire length of the existing driveway, and they answered in the affirmative. Schmidt testified that he did not tell the Gaceks how much additional area this would add to the 5,000 square feet referred to in the contract. Schmidt testified that, because Darby had not shown Schmidt the contract before he began work on the project, Schmidt did not know that the contract required Superior to install a 3" to 4" base of 89/10 crushed limestone before he installed the pavers and that he did not install such a base. Schmidt testified that, except in the areas where he removed portions of the concrete surface of the existing driveway, he merely put down a thin layer of sand on the concrete and asphalt surface of the existing driveway before installing the pavers. He further testified that, in order to make the pavers level with the road and the driveway, he had to remove approximately 1,000 to 1,500 square feet of the concrete surface of the existing driveway and that, in those areas, he put down a 2" to 4" layer of sand before installing the pavers. Schmidt estimated that installing pavers where the edges of the existing driveway had become overgrown with bushes had increased the area covered with pavers from the 5,000 square feet measured by Buell to 6,600 square feet.
 

 Peter Gacek and Mark Gacek, the Ga-ceks’ sons, testified that the edges of the existing driveway were not covered with grass or bushes when Buell measured the existing driveway.
 

 Superior completed its work in August 2006. On September 8, 2006, the Gaceks paid Superior $12,000, bringing the total amount they had paid to Superior to $32,000. During September 2006, a dispute arose between Superior and the Ga-ceks regarding the amount the Gaceks owed Superior. Superior contended that, in addition to the $45,000 specified by the contract, the Gaceks owed Superior $14,400 ($9.00 per square foot multiplied by 1,600 square feet) for its installing pav-ers in the 1,600-square-foot area of the driveway that Superior claimed had been overgrown with bushes when Buell had measured the existing driveway. The Ga-ceks contended that the contract specified a total price of $45,000 for installing pavers in the area covered by the existing driveway.
 

 In October 2006, the Gaceks gave Superior a check in the amount of $14,500, which consisted of the $13,000 difference between the $45,000 price referred to in the contract and the $32,000 the Gaceks had already paid Superior and an extra $1,500 they had agreed to pay Superior for removal of portions of the concrete surface of the existing driveway. The words “paid in full” were written on the check. Superi- or negotiated that check but continued to insist that the Gaceks owed Superior an additional $14,400 for installing pavers on the 1,600 square feet of the existing driveway that Superior claimed it had not included in its original measurement of the existing driveway.
 

 After Superior completed its work, the pavers began to move, creating gaps between the pavers. In addition, water began to flow into the Gaceks’ garage when it rained. The Gaceks complained to Superior about the problems with the pavers; however, Superior did not correct the problems. Dan Pressley, the general manager of Southern Paver Systems, testified that he had inspected the work performed by Superior at the Gaceks’ request. He testified that he had found no 89/10 crushed-limestone base under the pavers; that, in some areas where Superior had removed portions of the existing driveway,
 
 *720
 
 he had found sand under the pavers and that, in the other areas where Superior had removed portions of the existing driveway, he had found nothing but topsoil. He testified that the rest of the pavers installed by Superior were installed either on the asphalt surface of the existing driveway or on the concrete surface of the existing driveway. He also testified that he had observed that the pavers in the Gaceks’ driveway had begun to move, which had created gaps between the pavers. He testified that the movement of the pavers was caused by the absence of a proper base under them. He also testified that, as water got into the gaps between the pav-ers and more and more traffic traveled over the driveway, more and more gaps would open up between the pavers. Moreover, he testified that, because soil, asphalt, and concrete all settle differently from one another, in order to correct the defects in the driveway installed by Superior, all the pavers would need to be removed, cleaned, and stored on pallets while the area under the pavers was excavated and replaced with an 89/10 crushed-limestone base and then all the pavers would have to be installed again. Furthermore, he testified that his company would charge $67,436 to perform that work.
 

 In addition, Pressley testified that the work Superior had performed had caused water to flow into the Gaceks’ garage when it rained and that, in order to cure that problem, pipe would have to be installed so that the water would flow from the garage to the street. Pressley testified that the cost of installing such a drain pipe would be approximately $5,000.
 

 Standard, of Review
 

 Because the trial court received evidence ore tenus, our review is governed by the following principles:
 

 “When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
 
 J & M Bail Bonding Co. v. Hayes,
 
 748 So.2d 198 (Ala.1999);
 
 Gaston v. Ames,
 
 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank,
 
 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[u]nder the
 
 ore tenus
 
 rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’
 
 Transamerica,
 
 608 So.2d at 378. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court’s judgment.
 
 Allstate Ins. Co. v. Skelton,
 
 675 So.2d 377 (Ala.1996);
 
 Marvin’s, Inc. v. Robertson,
 
 608 So.2d 391 (Ala.1992);
 
 Gaston,
 
 514 So.2d at 878;
 
 Smith v. Style Advertising, Inc.,
 
 470 So.2d 1194 (Ala.1985);
 
 League v. McDonald,
 
 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the ore tenus standard of review.’
 
 Reed v. Board of Trustees for Alabama State Univ.,
 
 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal.
 
 Ex parte Cash,
 
 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo.
 
 Allstate,
 
 675 So.2d at 379 (‘[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).”
 

 
 *721
 

 City of Prattville v. Post,
 
 831 So.2d 622, 627-28 (Ala.Civ.App.2002).
 

 Analysis
 

 Superior argues that the trial court erred in ruling in favor of the Gaceks with respect to Superior’s breach-of-contract claim because it based that ruling on two erroneous grounds. First, Superior argues that the trial court based its ruling in favor of the Gaceks on the ground that the contract was a fixed-price contract specifying a total fixed price of $45,000 for the installation of pavers regardless of the size of the area where Superior installed pav-ers and that that was an erroneous ground for ruling in favor of the Gaceks because, Superior argues, the contract was a unit-price contract providing for a total price to be determined by multiplying the unit price of $9.00 per square foot times the number of square feet where Superior installed pavers. Thus, according to Superi- or, the total amount Superior was entitled to under the contract was $59,400 (6,600 square feet multiplied by the unit price of $9.00 equals $59,400) rather than $45,000, and, therefore, Superior asserts, the Ga-ceks owe Superior $14,400.
 

 Second, Superior argues that the trial court based its ruling in favor of the Ga-ceks on the ground that the parties did not execute a written order agreeing to the installation of pavers on the additional 1,600 square feet as an extra charge in accordance with the provision of the contract providing that “[a]ny alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate.” Superior argues that this second ground for the trial court’s ruling in favor of the Ga-ceks is erroneous because, Superior says, it is contrary to the intention of the parties as expressed in the contract and as expressed in the testimony of Buell.
 

 However, assuming, without deciding, that Superior’s arguments regarding those two grounds are correct, the record nonetheless presents another valid legal basis for the trial court’s ruling in favor of the Gaceks with respect to Superior’s breach-of-contract claim, and, subject to exceptions not here applicable, “this [c]ourt will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.”
 
 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C.,
 
 881 So.2d 1013, 1020 (Ala.2003).
 

 In order to prevail on a breach-of-contract claim, a plaintiff must prove, among other things, “[its] own performance under the contract.”
 
 State Farm Fire & Cas. Co. v. Williams,
 
 926 So.2d 1008, 1013 (Ala.2005). In order to satisfy that element, the plaintiff must prove that it substantially performed its obligations under the contract.
 
 See Mac Pon Co. v. Vinsant Painting & Decorating Co.,
 
 423 So.2d 216, 218 (Ala.1982). “Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts.”
 
 Id.
 
 “Whether a party has substantially performed a promise under a contract is a question of fact to be determined from the circumstances of each case.”
 
 Cobbs v. Fred Burgos Constr. Co.,
 
 477 So.2d 335, 338 (Ala.1985).
 

 In the case now before us, the undisputed evidence established that Superior did not install a base of 3" to 4" of 89/10 crushed limestone before installing the pavers as required by the contract. Press-ley testified that Superior’s failure to install that base caused the pavers to move, that the movement of the pavers allowed gaps to form between the pavers, and that the gaps allowed water into the gaps be
 
 *722
 
 tween the pavers, which, in turn, caused the pavers to move further apart. Based on that evidence, the trial court could have found that, because Superior did not install the 3" to 4" base of 89/10 crushed limestone before installing the pavers, Superior did not substantially perform the contract.
 

 In this case, the trial court made no specific findings of fact. When a trial court makes no specific findings of fact, this court will assume that the trial court made those findings necessary to support the judgment.
 
 See Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A.,
 
 608 So.2d 375, 378 (Ala.1992) (“Because the trial judge made no specific findings of fact, this Court will assume that the trial judge made those findings necessary to support the judgment.”). Accordingly, because the record contains credible evidence from which the trial court could have found that Superior did not substantially perform the contract, we affirm the ruling of the trial court in favor of the Gaceks with respect to Superior’s breach-of-contract claim on that ground.
 

 Superior also argues that the trial court erred in ruling in favor of the Gaceks with respect to Superior’s claim that the Gaceks owed Superior $14,400 for work and labor Superior had performed.
 

 “In an action for work and labor, the measure of recovery is the reasonable value of such work and labor performed. If such work and labor has no reasonable value for the purpose for which it was requested, there may be no recovery. Our examination of the testimony discloses a conflict as to quantity, quality and value of such work. It is the duty of the court hearing the testimony ore tenus to resolve the conflict and render a judgment accordingly. Having reached and entered such judgment, it is supported by a presumption of correctness upon appeal. Such presumption may be overcome only by a showing of absence of support in the evidence or that it is unjust.”
 

 Jones v. LeFlore,
 
 421 So.2d 1287, 1288 (Ala.Civ.App.1982) (citation omitted). The record contains evidence from which the trial court could have found that, because Superior did not install the base of 3" to 4" of 89/10 crushed limestone specified by the contract, the total value of the work and labor performed by Superior did not exceed the $46,500 the Gaceks paid Superior and, therefore, that Superior was not entitled to prevail on its claim that the Gaceks owed Superior $14,400 for work and labor done. As noted above, because the trial court did not make any specific findings of fact in this case, we will assume that the trial court made those findings necessary to support its judgment.
 
 See Trans-america,
 
 supra. Moreover, because a finding that the total value of the work and labor performed by Superior did not exceed the $46,500 the Gaceks paid Superior is supported by credible evidence, we cannot reverse the trial court’s ruling in favor of the Gaceks with respect to Superior’s claim that the Gaceks owed Superior $14,400 for work and labor done.
 
 See Jones,
 
 supra.
 

 Superior also argues that the trial court erred in awarding the Gaceks damages in the amount of $60,500 on their claims because, Superior says, that award constituted the cost to repair the defects in Superi- or’s work instead of the difference between the market value of the Gaceks’ property with the driveway constructed in a workmanlike manner in accordance with the contract and the market value of the Ga-ceks’ property with the driveway as actually constructed by Superior. Superior argues that this was error because, given the circumstances of this case, the award of repair costs constitutes economic waste. Superior cites
 
 Jacob & Youngs, Inc. v.
 
 
 *723
 

 Kent,
 
 230 N.Y. 239, 129 N.E. 889 (1921), in support of this argument.
 

 In
 
 Jacob & Youngs,
 
 Kent contracted with Jacob
 
 &
 
 Youngs, Inc. (“Jacob”), a contractor, to build a dwelling for a price of approximately $77,000. One of the specifications for the plumbing work provided that “ ‘[a]ll wrought-iron pipe must be well galvanized, lap welded pipe of the grade known as “standard pipe” of Reading manufacture.’ ” 230 N.Y. at 240, 129 N.E. at 890. Jacob completed the construction in June 1914, and Kent occupied the dwelling without complaint until he discovered in March 1915 that some of the pipe had been made in factories other than Reading. The architect then ordered Jacob to do the plumbing work anew. Because most of the plumbing pipes were encased within the walls, Jacob’s compliance -with that order would have required it to demolish substantial portions of the completed dwelling at great expense. Jacob did not comply with the order and requested a certificate that the final payment was due. Upon refusal of the certificate, Jacob sued Kent to recover the unpaid balance of the contract price, which was $3,483.46. The trial court excluded evidence offered by Jacob that tended to show that the brand of pipe installed was of the same quality as Reading pipe and directed a verdict in favor of Kent, and Jacob appealed. The Appellate Division of the New York Supreme Court reversed the trial court’s judgment and ordered a new trial. Kent then appealed to the Court of Appeals of New York, which affirmed the judgment of the Appellate Division. Justice Cardozo, writing for the majority, stated:
 

 “In the circumstances of this case, we think the measure of the allowance is not the cost of replacement, which would be great, but the difference in value, which would be either nominal or nothing. Some of the exposed sections [of pipe] might perhaps have been replaced at moderate expense. [Kent] did not limit his demand to them, but treated the plumbing as a unit to be corrected from cellar to roof. In point of fact, [Jacob] never reached the stage at which evidence of the extent of the allowance became necessary. The trial court had excluded evidence that the defect was unsubstantial, and in view of that ruling there was no occasion for [Jacob] to go farther with an offer of proof. We think, however, that the offer, if it had been made, would not of necessity have been defective because directed to difference in value. It is true that in most cases the cost of replacement is the measure.
 
 Spence v. Ham,
 
 [163 N.Y. 220, 57 N.E. 412 (1900) ].
 
 The owner is entitled to the money which will permit him to complete, unless the cost of completion is grossly and, unfairly out of proportion to the good to be attained. When that is true, the measure is the difference in value.
 
 Specifications call, let us say, for a foundation built of granite quarried in Vermont. On the completion of the building, the owner learns that through the blunder of a subcontractor part of the foundation has been built of granite of the same quality quarried in New Hampshire. The measure of allowance is not the cost of reconstruction. ‘There may be omissions of that [kind] which could not afterwards be supplied exactly as called for by the contract without taking down the building to its foundations, and at the same time the omission may not affect the value of the building for use or otherwise, except so slightly as to be hardly appreciable.’
 
 Handy v. Bliss,
 
 204 Mass. 513, 519, 90 N.E. 864, 134 Am. St. Rep. 673 [ (1910) ]. Cf.
 
 Foeller v. Heintz,
 
 137 Wis. 169, 178, 118 N.W. 543, 24 L.R.A.(N.S.) 321, 327 [ (1908) ];
 
 Oberlies
 
 
 *724
 

 v. Bullinger,
 
 132 N.Y. 598, 601, 30 N.E. 999 [ (1892) ]; 2 Williston on Contracts, § 805, p. 1541. The rule that gives a remedy in cases of substantial performance with compensation for defects of trivial or inappreciable importance has been developed by the courts as an instrument of justice. The measure of the allowance must be shaped to the same end.”
 

 230 N.Y. at 244-45, 129 N.E. at 891-92 (emphasis added).
 

 In the case now before us, however, the evidence would support a finding that the defects in Superior’s performance were substantial, rather than nominal as was the defect in Jacob’s performance in
 
 Jacob & Youngs.
 
 Accordingly, we conclude that the trial court did not err in awarding the Gaceks the cost to repair the defects in Superior’s work based on the ground that it constituted economic waste.
 

 Superior next argues that the trial court erred in awarding the Gaceks $60,500 because, Superior says, regardless of whether awarding the Gaceks the cost to repair the defects in Superior’s work would constitute economic waste, the proper measure of damages was the difference between the market value of the Gaceks’ property with the driveway constructed in a workmanlike manner in accordance with the contract and the market value of the Ga-ceks’ property with the driveway as it was actually constructed. However, in
 
 Kohn v. Johnson,
 
 565 So.2d 165, 168-69 (Ala.1990), the supreme court held that an owner who had sued a contractor because of defective work in constructing an addition to her home was entitled to recover the reasonable cost of making the contractor’s work conform to the contract where that amount did not constitute economic waste. Based on the authority of
 
 Kohn,
 
 we conclude that the trial court did not err in awarding the Gaceks the cost to repair the defects in Superior’s work.
 

 Superior next argues that the trial court erred in awarding the Gaceks $60,500 without allowing Superior a setoff in the amount of $14,400. However, this argument has no merit because, as we discussed above, the trial court’s rulings in favor of the Gaceks with respect to Superi- or’s claims seeking recovery of the $14,400 are due to be affirmed, and, consequently, Superior was not entitled to a setoff in that amount.
 

 Finally, Superior argues that the trial court erred in denying Superior’s motion to enforce the mediation agreement. However, the trial court held a hearing regarding that motion, and the record on appeal does not contain a transcript of that hearing. In the absence of a transcript of that hearing, we must presume that the trial court’s order denying Superior’s motion to enforce the mediation agreement was supported by evidence introduced at the hearing.
 
 See Prescott v. Prescott,
 
 6 So.3d 552, 554 (Ala.Civ.App.2008).
 

 Accordingly, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 PITTMAN, J., concurs.
 

 THOMPSON, P.J., and THOMAS and MOORE, JJ., concur in the result, without writings.
 

 [1]
 

 . The evidence at trial indicated that Superior was seeking $14,400 rather than $14,350.
 

 [2]
 

 . Buell ceased being an owner of Superior in 2008.