**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10283

————————————

BILL AUSTIN,
ANGIE AUSTIN,

*Plaintiffs-Appellants,*

*versus*

REGENCY REALTY INC.,
REGENCY MANAGEMENT INC.,
BILLY COTTER,
EVELYN HITCH,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:23-cv-00184-ECM-CWB

————————————

Before BRANCH, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

Bill and Angie Austin contracted to buy a house in southern Alabama.  But after the deal closed, they learned that the house they thought was the perfect vehicle for their tax strategy was actually infested with termites.  They brought this action alleging that their real estate agent and others conspired to breach contractual obligations while committing fraud to ensure that the Austins would buy the home despite the infestation.  The district court dismissed the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  On appeal, we conclude that the district court properly dismissed the complaint with prejudice for three reasons.  First, the Austins failed to plead that they performed their end of the contract with the defendants, an essential requirement under Alabama contract law.  Second, the Austins signed a purchase agreement containing an "as-is" clause, and in Alabama, such a clause defeats the reliance requirement of the fraud claims brought here.  Finally, because we determine that the Austins do not sufficiently state an underlying claim, their conspiracy claim also fails.  Thus, after careful review and with the benefit of oral argument, we affirm.

## I.    Background

### A.    Factual History

Plaintiffs Bill and Angie Austin, both Colorado residents, sold a property and wanted to buy another one so that they could benefit from a 1031 exchange.[1]  According to the Austins, a 1031

---

[1] Because this case reaches us at the motion-to-dismiss stage, we accept as true the facts in the plaintiffs' complaint and construe them in the light most

exchange is a tax vehicle through which sellers of real estate can lower their tax burden by investing the proceeds from the sale of one property into another qualifying property, so long as they hold the subsequently bought property for two years.  The Austins thought that southern Alabama would be a good spot to purchase their new property.

To help with their search, the Austins contacted defendants Regency Realty, Inc. and Regency Management, Inc., two Alabama corporations.  The Austins entered into an exclusive buyer agency agreement with Regency Realty, under which Regency Realty's employee—defendant Evelyn Hitch—would serve as the Austins' real estate agent and negotiate on their behalf in the purchase of real estate.  The property that the Austins eventually purchased, 104 Patricia Lane, was managed by Regency Management.  Defendant Billy Cotter owns and operates both Regency Realty (the real estate company) and Regency Management (the management company). [2]

Under the agency agreement[3] between the Austins (the "client") and Regency Realty (the "broker"), Regency Realty,

---

favorable to the plaintiffs.  *See Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019).

[2] Though Regency Management "leased and managed" the property, Regency Management did not own it.  The Austins have not alleged that the sellers were associated with Regency Management, nor did they name the sellers as defendants.

[3] The plaintiffs did not attach the agency agreement or the property purchase agreement to their complaint.  Instead, the defendants attached both

through Hitch, agreed to work as the Austins' "sole and exclusive agent" to "locate acceptable real property" for the Austins and "negotiate terms and conditions" for the sale of the property.

Section 3 of the agreement, entitled "CONDITION OF PROPERTY," stated that Regency Realty "makes no representations whatsoever regarding the condition of any such property or its suitability to the Client's intended purposes." That same section further provided:

> Client, and not the Broker, has the responsibility to determine or verify either personally or through or with a licensed contractor or other representative of the Client's choosing, any and all conditions of the property material to the Client's decision to buy the property. The Client agrees to obtain and pay for a property condition inspection from a qualified residential inspector(s) chosen by the client and to make any offer to purchase contingent upon such inspection as provided in the Wiregrass Board of Realtors printed contract form.

---

documents to their motion to dismiss. "[W]hen resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The district court applied a previous version of our incorporation-by-reference doctrine and concluded that the agreements were central to Austins' claim and referred to in their complaint. No party disputed that conclusion. Thus, even post-*Johnson*, the district court's decision to consider the agreements was proper.

Having signed the agency agreement, the Austins moved forward with the purchase of 104 Patricia Lane.  The Austins allege that they "demanded to be permitted to view the house inside and/or outside on four occasions," including "during the roofing inspection," "on the day of a termite inspection," and "on the day the surveyor was there."[4]  But "Hitch utterly refused each time." Hitch told the Austins that "Regency Management refused to permit" the Austins to do a walkthrough of the property.  Hitch said that "this [was] Alabama, not Colorado," so the norms were different.  But during the relevant time, the Austins allege, Regency Management "leased and managed" the property and "had physical access to" it.  That is, "Regency Management operated in its management contract as the 'Landlord' and had all powers of entry and inspection that any Landlord would have."

Eventually, the parties executed a purchase agreement to buy the property managed by Regency Management.  Section 11 of the agreement, entitled "BUYER'S DUTY TO INSPECT," provided:

> Buyer understands that Alabama law imposes a duty on Buyer to thoroughly inspect a property for conditions of property defects or other relevant matters prior to closing the sale.  Buyer further understands that professional inspection services and/or contractors may be engaged for this purpose.

---

[4] While the complaint does not specify when these demands took place, at oral argument counsel for the Austins asserted that "most of them were before" the Austins signed the purchase agreement, but at least one was after.

Buyer is encouraged to engage and pay for independent professional inspection services and/or contractors, including but not limited to termite pest control companies, rather than using previous Seller-acquired inspection reports; rather than allowing the Seller to pay for such inspection reports; or rather than using an inspector recommended by Seller. Buyer agrees to inspect the property within ____ days[5] prior to closing.

Brokers/Licensees do not endorse any particular professional inspection service and/or contractor. Buyer understands and agrees that Buyer will not rely and has not relied on any statements or omissions made by any Broker/Licensee regarding the condition of the Property. Buyer further understands that if a Broker/Licensee is present at or accompanies Buyer on an inspection or walk-through of the Property, it will be as a courtesy and not as a person qualified to detect any defects. **After closing of this sale, all conditions of the Property are the responsibility of Buyer.**

(emphasis in original).

Section 11 then continued, under a subheading entitled "CONDITION OF THE PROPERTY":

NEITHER SELLER NOR ANY BROKER / LICENSEE MAKES ANY REPRESENTATION OR

---

[5] The parties left the time period blank in the executed purchase agreement.

24-10283                    Opinion of the Court                    7

WARRANTIES REGARDING CONDITION OF THE PROPERTY EXCEPT TO THE EXTENT EXPRESSLY SET FORTH HEREIN.  Buyer has the obligation to determine any and all conditions of the Property material to Buyer's decision to purchase the Property, including, without limitation, the condition of the heating, cooling, plumbing and electrical systems; any built-in appliances; the roof and the basement, including leaks therein; the presence of asbestos, or toxic mold; the presence of, or damage from, wood destroying insects and/or fungus; [and] the presence of vermin or other pest infestation . . . . **Buyer shall have the opportunity and the obligation to determine the condition of the Property in accordance with 12.A or 12.B below. Unless otherwise excepted, Seller will provide access and utilities for Buyer's inspections until closing.**  Note: Lenders and/or public authorities may require certain investigations such as termite and septic tank inspections.  This does not replace Buyer's duty to thoroughly inspect the Property prior to closing.

(emphasis in original).

Sections 12.A and 12.B of the agreement offered the Austins two options when it came to inspection.  Section 12.A stated:

SALE OF PROPERTY NOT CONTINGENT UPON INSPECTION: Buyer agrees to accept the Property in "AS IS" condition.  Seller gives **no** warranties on any systems or appliances being in good working order, and in consideration for the Purchase Price,

> Buyer accepts total responsibility for all repairs, improvements, and/or defects currently existing in the Property.

(emphasis in original).

Section 12.B, on the other hand, allowed the buyer to condition the sale of the property on inspection. The Austins chose the first option under section 12.A, accepting the property "as-is."

Next, section 14.B of the agreement, entitled "WOOD INFESTATION REPORT," provided:

> Seller agrees to pay for wood infestation certification from a state licensed and bonded operator, stating that a visual inspection of accessible areas INDICATES THE DWELLING is free and clear of any active infestation by wood destroying insects or fungus and any damage caused by active infestation and structural damages. THIS IS NOT A STRUCTURAL DAMAGE REPORT, NOR A WARRANTY AS TO THE ABSENCE OF WOOD DESTROYING INSECTS. Should a wood destroying insect inspection report disclose damage or infestation, Seller shall immediately treat and repair same . . . ."

(emphasis in original).

Section 17 of the purchase agreement limited the liability of and provided a release for the listing and selling companies and related parties. As relevant here, the section provided:

24-10283                Opinion of the Court                9

> **BUYER AND SELLER HEREBY ACKNOWLEDGE
> AND AGREE** the listing and selling companies, their
> officers, director(s), employees[], broker(s), and sales
> associates shall not be held responsible or liable for
> any obligations or agreements that the Buyer or Seller
> have to one another hereunder and shall not be held
> responsible for any representation or the passing of
> any information to or from the Buyer or Seller and[]
> agree to discharge and release the companies, their
> officers, directors, employees, brokers, and sales
> associates from any claims, demands, damages,
> actions, causes of actions or suit at law arising from
> the sale of said property and shall include but not be
> limited to the . . . existence of, or damage from, wood
> destroying insects . . . .[6]

(emphasis in original).

The purchase agreement specified that Regency Realty was acting as an agent for the Austins and not the sellers.

Despite never having inspected the property themselves, the Austins closed on the property. "At the closing, only one termite report was presented to the Austins." Yet the Austins eventually discovered that "another termite inspection had been done by Terminix at the request of the defendants." That second inspection was "not disclosed" at closing, and, according to the Austins, it

---

[6] Along with releasing the identified parties from claims related to termites, the release also included other property conditions, such as heating, cooling, plumbing, roofing, basement leaks, sewer issues, etc.

would have "accurately conveyed the magnitude of the destruction of the property" had it been disclosed.  In other words, the first report did not show the damage eventually revealed by the second.

Upon taking possession of the property, the Austins "identified a massive termite infestation that will require massive repairs."  The Austins alleged that if they resell the home "in less than two years" "they will lose the benefit of the 1031 exchange, the whole point of the transaction."[7]

### B.    *Procedural History*

In April 2023, the Austins filed a five-count complaint against Regency Realty, Regency Management, Billy Cotter, and Evelyn Hitch.[8]  Count I alleged that Regency Realty, Cotter, and Hitch breached the agency agreement by failing to (1) "disclose all information pertinent to the purchase of the home to the buyers"; (2) "disclose to the buyers the knowledge the defendants had as to the state of repair of the home"; (3) "disclose all inspections of the home"; (4) "help the buyers obtain access to the property to walkthrough and inspect the property"; and (5) "not favor the

---

[7] We note that the Austins filed their complaint more than two years ago, on April 5, 2023, so the Austins have likely satisfied this tax requirement.  But as the Austins allege they had to hold the property for that tax benefit to accrue, their claim for damages (due to their inability to sell without a tax penalty) is not moot.  In any event, the underlying purchase of a house with termite damage would still provide a basis for damages if the Austins stated a lawful cause of action.

[8] In numbering the counts, the complaint skipped the number four.  For simplicity's sake, we refer to the counts as numbered in the complaint.

sellers of the property in order to generate a sale over the buyers of the property."

Counts II, III, and V all alleged species of fraud. Count II alleged that Regency Realty, Cotter, and Hitch misrepresented (1) whether Regency Management would allow a walkthrough of the property, and (2) the value of the property by not disclosing the termite infestation to the Austins. Count III alleged that all the defendants suppressed (1) the second termite report and their knowledge that the house had termites; (2) the reality that the Austins could walk through and inspect the property; and (3) the fact that "the value of the home was less than stated," given the termite infestation. Count V alleged that the defendants deceived the Austins by disclosing the first termite report and not the second when the second would have accurately stated the extent of the infestation. This claim also realleged the allegations made in Count III about the defendants' suppression of information. Finally, Count VI alleged conspiracy in that all the defendants "combined[] and confederated to do the illegal actions complained of above."

The defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). After briefing, the district court granted their motion.

As to Count I, breach of contract, the district court first held that the Austins did "not allege anywhere in their complaint their own performance under the buyer's agent contract"—a required element for breach of contract under Alabama law. The court then held that the agency agreement did not impose the contractual

duties that the Austins alleged the defendants had breached, largely because the agreement explicitly stated that Regency Realty made no representations about the property's conditions. Given that the contractual duties the Austins asserted mostly concerned the property's conditions, their claim failed. The district court added that it "discern[ed] no language in the Agency Agreement indicating that it was Regency Realty's or Hitch's responsibility to secure the Austins personal access to the property on the occasions alleged in the complaint."

As for Counts II, III, and V (misrepresentation, suppression, and deceit, respectively), the district court held that the Austins failed to plausibly allege reliance on any misrepresentation, suppression, or deceit—as required under Alabama law—because the purchase agreement stated that the Austins bought the property "as is." Finally, the district court concluded that the Count VI conspiracy claim could not survive absent an underlying claim.

The district court thus dismissed the complaint with prejudice, and the Austins timely appealed.

## II.    Standard of Review

"We review de novo the district court's grant of a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020) (quotation omitted). "But our duty to accept the facts in the

complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations, because when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2023) (alteration adopted) (quotation omitted).

## II.    Discussion

The Austins argue that the district court erred in dismissing each of their claims. Their claims can be divided into three categories: (1) breach of contract; (2) fraud, including misrepresentation, suppression, and deceit; and (3) conspiracy. We address each category in turn.

### A.    Breach of Contract

As to the breach of contract claims, the Austins argue that they state a valid claim for breach of contract because Regency Realty, Cotter, and Hitch breached their contractual duties under the buyer agency agreement to disclose information about the house and to work on the Austins' behalf. But because the Austins did not allege in the complaint that they performed all their duties under the contract, the district court correctly found that they failed to state a viable breach-of-contract claim under Alabama law.

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020) (quotation

omitted).  Each element is necessary for a plaintiff to state a claim, including alleging "[his] own performance under the contract." *Superior Wall & Paver, LLC v. Gacek*, 73 So. 3d 714, 721 (Ala. 2011) (quotation omitted).  The question for the court is whether the plaintiff "substantially performed" his obligations.  *Id*.  "Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts."  *Id.* (quotation omitted); *see Bruner v. Hines*, 324 So. 2d 265, 269 (Ala. 1975) (holding that substantial performance was satisfied when a survey showed 15.1 acres instead of the agreed-upon 15 acres).

The agency agreement between the Austins and the defendants stated: "The Client [*i.e.*, the Austins] agrees to obtain and pay for a property condition inspection from a qualified residential inspector(s) chosen by the client and to make any offer to purchase contingent upon such inspection as provided in the Wiregrass Board of Realtors printed contract form."  The Austins, however, did not make their purchase contingent upon inspection.[9] Instead, as the purchase agreement shows, the Austins "accept[ed]

---

[9] The Austins contend that the buyer agency agreement allows them to satisfy their duty to inspect through the broker's work in scheduling inspections or obtaining reports, though they cite no caselaw to support this proposition. Even assuming that this contention is true, the fact that the broker offers these services does not alter the requirement in the agreement for the Austins "to make any offer to purchase contingent upon [an] inspection."  The Austins accepted the house "as is" and did not make the purchase contingent on an inspection, whether facilitated by the broker or otherwise.

24-10283                  Opinion of the Court                    15

the Property in 'AS IS' condition" and "accept[ed] total responsibility for all repairs, improvements, and/or defects currently existing in the Property," despite their obligation to the contrary under the agency agreement. The district court found that the Austins did not allege their performance of this obligation under the buyer agency agreement and that there were no facts from which the court could infer the Austins did perform this obligation.

We agree with the district court. The Austins were bound under the agency agreement to obtain and pay for a property condition inspection and to condition the purchase on an inspection. The Austins do not allege that they did so; in fact, the facts as alleged and the purchase agreement itself show that the Austins waived any inspection of the property by accepting the property "as is." Because the Austins do not allege their own performance and instead performed contrary to their contractual obligation, they cannot state a breach of contract claim, and the claim was properly dismissed.[10]

---

[10] Because we determine that the Austins have not alleged their own performance under the buyer agency agreement, we need not decide whether the buyer agency agreement created the alleged contractual duties in the defendants. *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1292 (11th Cir. 2025) (determining that "[w]e may affirm on any ground supported by the record" (quotation omitted)).

16                    Opinion of the Court                    24-10283

### B.    Fraud

The Austins argue that they plausibly alleged that the defendants engaged in three forms of fraud (misrepresentation, suppression, and deceit (Counts II, III, and V)) that misled them about the house and caused them damages.  But the Austins agreed to an as-is clause when they signed the purchase agreement.  For the reasons we will explain below, that as-is clause is fatal to the Austins' fraud claims.

Each of the varieties of fraud the Austins asserted must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, including that the pleading "state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added).  To prove fraud under Alabama law based on misrepresentation, deceit, or suppression, the Austins had to plausibly allege the following elements: "(1) a false representation (2) of a material existing fact (3) *reasonably relied upon by the plaintiff* (4) who suffered damage as a proximate consequence of the misrepresentation." *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Nat. Res.*, 986 So. 2d 1093, 1114 (Ala. 2007) (emphasis in original) (quotations omitted).  A party's "reliance requires that the misrepresentation actually induced the injured party to change its course of action." *AstraZeneca LP v. State*, 41 So. 3d 15, 28 (Ala. 2009) (quotation omitted).

The Austins' fraud claims all hinged on proving their reasonable reliance on the defendants' failure to disclose termite damage and the misrepresentations about the availability of a

24-10283            Opinion of the Court            17

property walkthrough.  The Austins asserted these statements (or lack thereof) led them to buy a termite-infested house and suffer damages.  Because the Austins have alleged damages, we turn to the remaining elements of fraud. And because the Austins' false representation claim relies on the alleged disclosure requirements, we must consider Alabama real estate disclosure law.

"In Alabama, the doctrine of *caveat emptor*, 'let the buyer beware,' applies to the sale of used real estate and ordinarily relieves a seller of any duty to disclose to a buyer defects in the property." *Kidd v. Benson*, 321 So. 3d 676, 679 (Ala. 2020).[11]  That said, there are "three exceptions to the doctrine [of caveat emptor] that require a seller to disclose to the buyer known defects in the property." *Id.*  First, "a seller has a duty . . . to disclose known defects if a fiduciary relationship exists between the buyer and the seller." *Id.*  Second, "a seller has a duty to disclose material defects affecting health or safety not known to or readily observable by the buyer." *Id.* at 679–80 (emphasis omitted).  And third, "a seller has a duty to disclose if the buyer inquires directly about a material defect or condition of the property." *Id.* at 680 (citing *Nesbitt v. Frederick*, 941 So. 2d 950, 956 (Ala. 2006)).

At the same time, there is a significant exception to these disclosure exceptions under Alabama law—the "as-is" clause. "[W]hen a buyer elects to purchase real property subject to an 'as is' clause in the purchase agreement and neglects to inspect the

---

[11] As the district court noted, the Austins do not dispute that the property at issue was "used."  Therefore, *caveat emptor* is the general rule here.

property, the buyer cannot take advantage of any exceptions to the doctrine of *caveat emptor*." *Id.* (collecting cases). That result holds true even when a plaintiff argues that the failure to disclose and the misrepresentations associated with that failure constitute fraudulent misrepresentation, suppression, or deceit, because reasonable reliance is an essential element of each of these claims, and "an 'as is' clause negates the element of reliance." *Clay Kilgore Constr., Inc. v. Buchalter/Grant, L.L.C.*, 949 So. 2d 893, 898 (Ala. 2006) (noting that "the element of reliance [is] essential to any claim of fraud and/or fraudulent suppression"); *see Exxon Mobil Corp.*, 986 So. 2d at 1113–14 (explaining that "[t]he fraud charged in the State's complaint [was] misrepresentation, deceit, and/or suppression," and then listing reasonable reliance as an element); *Kidd*, 321 So. 3d at 681 (affirming summary judgment on fraud, negligence, and wantonness claims because the plaintiffs "purchased the property in its 'as is' condition"); *Teer v. Johnston*, 60 So. 3d 253, 258 (Ala. 2010). The "as-is" clause negates reliance on statements made by real estate agents involved in the sale when those agents have not assumed a duty to inspect the property. [12] *See Massey v. Weeks Realty Co.*, 511 So. 2d 171, 173 (Ala. 1987) (holding that a buyer did not have a right to rely on oral representations made by the seller's agent before the buyer signed a purchase agreement with an "as is" provision).

---

[12] We note that nowhere in the buyer agency agreement do Hitch or Regency Realty assume the duty to inspect; instead, "[t]he [Austins] agree[d] to obtain and pay for a property condition inspection."

Here, when the Austins signed the purchase agreement, they checked a box next to the purchase agreement's as-is clause, which reads:

> SALE OF PROPERTY NOT CONTINGENT UPON INSPECTION: Buyer agrees to accept the Property in "AS IS" condition.  Seller gives **no** warranties on any systems or appliances being in good working order, and in consideration for the Purchase Price, Buyer accepts total responsibility for all repairs, improvement, and/or defects currently existing in the Property.

(emphasis in original).  Section 11 of the purchase agreement also states that "Buyer understands and agrees that Buyer will not rely and has not relied on any statements or omissions made by any Broker/Licensee regarding the condition of the Property."

Thus, considering that the Austins expressly agreed they had not (in the past) and would not (in the future) rely on a broker's assertion, the Austins cannot plausibly allege reasonable reliance on any misrepresentations or omissions "regarding the condition of the property" before or after signing the purchase agreement.  *See Nesbitt*, 941 So. 2d at 959 (rejecting home buyers' fraudulent misrepresentation and suppression claims regarding structural problems in the house they bought because they signed a purchase agreement that provided that the purchase was "as is," and that the buyers had the responsibility to inspect the house).  Accordingly, given the as-is clause, the Austins cannot plausibly plead reliance, and their claims fail as a matter of law.  *See Clay Kilgore Constr.*, 949

So. 2d at 898 ("[A]n as-is clause negates the element of reliance essential to any claim of fraud and/or fraudulent suppression."); *Exxon Mobil Corp.*, 986 So. 2d at 1113–14.[13]

The Austins also raise claims not covered by the "as-is" clause. Specifically, they allege that Regency Management, Cotter, and Hitch misrepresented facts, suppressed facts, and deceived the Austins regarding the Austins' ability to do a walkthrough of the property. Viewed in the light most favorable to the Austins, this allegation does not concern the condition of the property and would not be precluded by the as-is clause. Yet the Austins still cannot prove reliance on these statements, regardless of falsity.

The Austins do not state with particularity when the misleading statements about their inability to inspect allegedly occurred relative to their signing of the purchase agreement. *See supra* n.4; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud."). Despite this pleading deficiency, the timing of the false

---

[13] With regard to their fraudulent deceit claim (Count V), the Austins argue that Alabama law requires them to plead only that the defendants deceived them "with intent to induce [them] to alter [their] position." Ala. Code § 6-5-104(a) (2025) (providing that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers"). But claims for misrepresentation, suppression, and deceit are all species of common-law fraud under Alabama law and as such require a plaintiff to allege reasonable reliance to successfully plead a claim. *See Exxon Mobil Corp.*, 986 So. 2d at 1113–14. And because the "as-is" clause precludes the Austins from demonstrating their reliance, *see Clay Kilgore Constr.*, 949 So. 2d at 898, their fraudulent deceit claim also fails.

statements is ultimately of little consequence. If the misleading statements about the walkthrough occurred before the Austins signed the purchase agreement, the Austins then signed the purchase agreement and chose the "as-is" option notwithstanding their inability to inspect the property. The Austins nowhere allege that they would not have signed the purchase agreement or would not have selected "as-is" if Hitch had not misled them regarding the ability to do a walkthrough of the property. Thus, they cannot prove reliance leading to damages.

The same holds if the allegedly false statements occurred after the Austins signed the purchase agreement. Once the Austins signed the agreement, they were bound to accept the property "as-is," regardless of any inspections. Because any false statements Hitch made about a walkthrough after the signing of the purchase agreement could not affect the Austins' obligations under the agreement, the Austins still cannot prove reliance leading to damages.

Because the Austins cannot demonstrate their reliance as an element of any of their fraud claims, the district court appropriately dismissed Counts II, III, and V of the complaint.[14] [15]

---

[14] Because we determine that the Austins failed to allege reliance, we do not reach the defendants' argument that the Austins released them from liability. *See Pop*, 145 F.4th at 1292.

[15] Because we determine that the other claims do not survive, the conspiracy claims (Count VI) cannot survive on their own, and the district court properly dismissed them. *See Freeman v. Holyfield*, 179 So. 3d 101, 106 (Ala. 2015)

### III.    Conclusion

For these reasons, the district court did not err in dismissing the Austins' complaint with prejudice.

**AFFIRMED**.

---

("Conspiracy is not an independent cause of action; therefore, when alleging conspiracy, a plaintiff must have a viable underlying cause of action." (quotation omitted)).